## WILLIAMS et al. v. FREEPORT SULPHUR CO. et al.

No. 9361.

Court of Civil Appeals of Texas. Galveston.

April 4, 1930.

On Motions to Dismiss, and Withdraw Opinion, June 17, 1931.

Samuel B. Dabney, of Houston, and Henry W. Anderson and Thomas B. Gay, both of Richmond, Va., for appellants.

Follett & Evans, of Angleton, and Andrews, Streetman, Logue & Mobley, of Houston, for appellees.

PLEASANTS, C. J.

This suit was brought by appellants as stockholders in the appellee corporations, the Freeport Sulphur Company and the Freeport Texas Company, against the above-named corporations and P. George Maercky, individually and as general manager of the Freeport Sulphur Company, for mandamus to compel the defendants to permit an inspection by plaintiffs of the properties, books, and records of defendant corporations.

For the purposes of this opinion, the allegations of the petition need not be set out at length, and will only be stated to the extent necessary in the elucidation of the questions presented by this appeal.

It is alleged, in substance, that the Freeport Sulphur Company is a corporation organized and chartered under the laws of this state, with its domicile and place of business in Brazoria county; that P. George Maercky, who resides in Brazoria county, is the general manager of said corporation; that the Freeport Texas Company is a corporation organized under the laws of the state of Delaware, with its general offices in the city of New York, where its president, E. P. Swenson, resides, and that the Freeport Sulphur Company is an agent of the Freeport Texas Company representing and doing business for it in the State of Texas.

It is further alleged that the Freeport Texas Company is a holding, operating, and controlling company, and holds all of the stock of the Freeport Sulphur Company, except a few shares held by the directors of the last-named company to qualify them for such office, and that "a great proportion of the values owned by the Freeport Texas Company consist of the assets of the Freeport Sulphur Company, the stock of which belongs to the Freeport Texas Company, with the nominal exceptions stated; and the Freeport Texas Company controls through the stock ownership the Freeport Sulphur Company, upon the success of which and the economic and efficient management of which and the existence of valuable assets, a great part of the values of the Freeport Texas Company and the values of its stock depend."

The number of shares of stock issued by the Freeport Texas Company is alleged to be 729,844, of no face value, and plaintiffs are alleged to be the owners of 23,200 of these shares, and that "all of these shares have been acquired in good faith and the plaintiffs are the true owners hereof, and each of the plaintiffs now represents that he has no interest in any rival company, or any other producer of sulphur, and that each of them and they together now allege that they bring this suit in good faith and for no purpose of injuring the defendants or any of them, but for the sole purpose of protecting their rights and ascertaining what assets there may be of the Freeport Sulphur Company, and for the purpose of inquiring into its management and methods of operation; and that they bring this suit for the benefit of themselves and all other stockholders to the extent of their just rights and for the protection of the interests of the defendants, and not adversely to them, and in assertion of their rights of stockholders and the rights of all other stockholders similarly situated, and who may desire to co-operate with them or receive the benefits of this suit."

The number of shares of stock of the Freeport Sulphur Company issued and outstanding is alleged to be 2,000, of the par or face value of $100 each, all of which, with the nominal exceptions before stated, are owned and held by the Freeport Texas Company.

It is then alleged that plaintiffs as stockholders in the Freeport Texas Company had on October 23, 1928, through a letter written by their attorney, Mr. Samuel B. Dabney, to the executive office of defendant corporations at Freeport, Tex., requested permission to have an investigation made of the records and activities of the Freeport Sulphur Company,

stating in said letter that this right was absolute and that he "trusted there would be no objection," and requesting "a reply at the earliest possible moment." This letter was duly received by the defendant Maercky, and the request therein contained was referred by him to the president of the company in New York. A copy of this letter of Mr. Dabney's was sent by him to Messrs. Andrews, Streetman, Logue & Mobley, attorneys for defendant corporations at Houston, Tex. On October 26, the defendant attorneys acknowledged receipt of Mr. Dabney's letter and informed him that the general manager, Mr. Maercky, had written the president of the company for instructions. Additional request for a definite reply made by Mr. Dabney on November 2, 1928, brought the information from Mr. Maercky that the Freeport Sulphur Company declined to permit the investigation requested, and from the attorneys for the defendant corporations "that they had no instructions from their principals." In the meantime, on October 3, 1928, "the plaintiff, E. Randolph Williams, for himself and others, signing the letter prepared by him, forwarded a letter from Richmond, Virginia, to E. P. Swenson, President of the Freeport Texas Company, stating that they were all holders of substantial amounts of stock of that company; that they had been unable to get detailed information to check its affairs; and that it was assumed that E. P. Swenson would concur that they were entitled to all information necessary to ascertain with any accuracy the fair value of their stock, which had been declining upon the stock market; that they did not desire to embarrass the management, but were substantially interested, and that they requested (1) the original or a copy of the detailed report of the auditors, including the details of the last audited report for the fiscal year ending November 30, 1927; (2) a copy of the reports of the engineers, of which it was understood three had been made for the company in the past two years showing the amount of sulphur reserves in the company's properties or those in which it is interested; and (3) a copy of the income tax return to the Federal Government for the year ending December 31, 1927, or if for the fiscal year, then for that ending November 30, 1927; and also that they be permitted to have a certified public accountant selected by them, satisfactory to the Freeport Texas Company, call at the office of the company and make an examination of the records for the past two years. To this letter E. P. Swenson as President of the Freeport Texas Company, 52 Wall Street, New York City, replied on October 9th, and stated:

" 'We regret that we do not feel that it is proper to furnish you with information which is not furnished to all stockholders.' Signed Freeport Texas Company, E. P. Swenson, President.

"To this last letter E. Randolph Williams replied on October 11th, stating that it was not his desire or that of other stockholders to receive information which might not be furnished to all stockholders, but to receive information which is in the possession of the officers who are large stockholders of the company, and that 'those stockholders who do not occupy the favorable position of officers of the company are now without information from which they can base any reasonable judgment as to the value of the stock which they hold.' He then stated that he repeated that it was not the desire of himself and associates to be given any exclusive statement or privileges, and suggested that the company have prepared and issue a statement in response to the inquiry made, and send the same to all stockholders, and renewed his request of October 3rd. To this last demand no answer has been received."

After being so informed of the refusal of the defendant corporations to permit the requested examination of their records, this suit was filed on December 18, 1928. The petition asks for service upon the defendants, and each of them, and alleges that the defendant Maercky is the local agent of the Freeport Texas Company, "and that the Freeport Sulphur Company is an acting corporation, acting in Texas and associated with the Freeport Texas Company as its agent", and that service may be made upon the Freeport Texas Company "by service upon the Freeport Sulphur Company as an associate and acting corporation in Texas, and as representing and acting for the Freeport Texas Company, as provided by law." The petition closes with an appropriate prayer for relief.

The defendant Freeport Sulphur Company and P. George Maercky, as general manager of the company, and individually, filed a plea in abatement on the following grounds:

"1. It does not appear from plaintiffs' pleadings, nor is it alleged by plaintiffs, that they or any of them are stockholders in defendant Freeport Sulphur Company.

"2. It does not appear from plaintiffs' petition, nor is it alleged therein, that defendant P. George Maercky as General Manager, has any connection with, or that he is employed by the defendant Freeport Texas Company.

"3. The defendant Freeport Texas Company, a corporation, alleged by plaintiff to be chartered under the laws of the State of Delaware, and having its principal office and place of business in the City of New York, State of New York, has not been properly served with citation in this cause and has filed no answer herein, and said defendant Freeport Texas Company is not doing business in Texas and was not doing business at the time of the filing of this suit, and has not been doing business in Texas at any time since the filing of this suit.

"4. Defendant Freeport Texas Company has no President in Texas, and has no Vice-President, Secretary, Treasurer or General Manager in Texas, and it has no local agent, traveling agent or traveling salesman in Texas, or agent of any kind in Texas.

"5. Defendant Freeport Texas 'Company is a necessary party to this suit and no right of recovery herein exists or can exist against Freeport Sulphur Company in any event in the absence of Freeport Texas Company as a party before this court.

"6. Defendant Freeport Texas Company is a necessary party to this suit and no right of recovery herein exists or can exist against P. George Maercky as general manager, and P. George Maercky individually, in any event.

"Wherefore, said defendants pray that the suit of plaintiffs be abated and dismissed and that said defendants recover of plaintiffs and each of them their costs in this behalf expended, and for such other relief as to which they may be entitled, and as in duty bound will ever pray."

Subject to and conditioned upon the overruling of this plea these defendants answered by a general demurrer and general denial.

The attorneys for the defendants, as friends of the court, filed the following suggestions of want of proper service of citation on the defendant Freeport Texas Company:

"1. Freeport Texas Company, one of the defendants in this cause, has not been properly served with citation herein and is not properly before the court for any adjudication with respect to its rights herein in that pretended service of process upon it has been attempted, according to the return of the sheriff, by the leaving of a copy of citation issued in this cause and the accompanying certified copy of plaintiffs' petition, at the office of Freeport Sulphur Company, as agent for said Freeport Texas Company, while in truth and in fact said Freeport Sulphur Company is not the agent, and was not the agent, at the time of such pretended service of Freeport Texas Company.

"2. Freeport Texas Company is not engaged in doing business in this State, and was not so engaged at the time of the filing of this suit, nor since said date, and the facts with respect to all of the matters and things in connection with said service, or pretended service, of citation upon said Freeport Texas Company are fully set forth and contained in the affidavit of P. George Maercky, which is attached hereto and made a part hereof for all purposes.

"3. A copy of this suggestion and a copy of said affidavit, have prior to the filing hereof been furnished to Mr. Samuel B. Dabney, attorney of record for plaintiffs herein.

"Wherefore, we respectfully suggest, as friends of the court, that said pretended service upon said Freeport Texas Company should be held for naught and that said defendant should be dismissed from this cause unless further and lawful service of process upon said defendant be evidenced to this court, all of which is respectfully submitted.

"Follett & Evans .

"Andrews, Streetman, Logue & Mobley
As friends of the Court.

"State of Texas, County of Brazoria.

"Before me, the undersigned authority, on this day personally appeared P. George Maercky, who after being by me duly sworn, on oath deposed and made the following statement:

"My name is P. George Maercky. I reside at Freeport in Brazoria County, Texas. I am Vice-President and General Manager of Freeport Sulphur Company, a corporation chartered under the laws of the State of Texas and having its domicile and principal place of business at Freeport in Brazoria County, Texas. The purpose for which Freeport Sulphur Company was incorporated, as stated in its charter, reads as follows:

" 'The purpose for which this corporation is formed is the transaction of any manufacturing or mining business and the purchase and sale of such goods, wares and merchandise used for such business.'

"I have been Vice-President and General Manager of Freeport Sulphur Company from a date prior to the filing of the suit of E. R. Williams et al. v. Freeport Sulphur Company et al., now pending in the District Court of Brazoria County, Texas.

"I am 'not employed by, and I have no connection with, Freeport Texas Company, one of the defendants in said suit. I am not the President of said Freeport Texas Company, nor am I its Vice-President, Secretary, Treasurer or general manager, nor am I the local agent of said Freeport Texas Company, nor its traveling agent or traveling salesman, nor am I its agent for any purpose or in any sense or in any capacity. My salary is paid wholly by Freeport Sulphur Company, and in the conduct of the business of Freeport Sulphur Company and in the management of its affairs I am responsible only to the President of Freeport Sulphur Company, in his capacity as such President, and to the Board of Directors of Freeport Sulphur Company.

"I have never represented Freeport Texas Company in any capacity whatsoever. Freeport Texas Company is not engaged in any business whatsoever in Texas and it has no permit to do business in Texas, and it does not do any business in the State of Texas, and was not doing any business in the State of Texas at the time of the filing of the above mentioned suit or since that time; said Freeport Sulphur Company is not an agent or representative of Freeport Texas Company and it is not doing business for said Freeport Texas Company, nor is said Freeport Sulphur

Company acting for, nor is it associated with, said Freeport Texas Company in the State of Texas. The business of Freeport Sulphur Company is the production and marketing of sulphur, and it produces sulphur only in Brazoria County, Texas, and its selling operations are conducted principally in New York City, where it maintains an office.

"Further this deponent saith not.

"P. George Maercky."

This affidavit was sworn to and signed before a notary public.

Plaintiffs answered each of these pleadings of defendants by a general demurrer and a general denial and specially excepted to the plea of abatement on the ground that the suit could be maintained against the other defendants without making the nonresident defendant a party and having it before the court by proper service.

Upon a hearing in the court below on February 5, 1929, all of plaintiffs' demurrers and exceptions were overruled, and the suggestion and motion of the friends of the court, and the plea in abatement presented by the answering defendants, were both sustained, and orders made and entered dismissing plaintiffs' suit, as to all defendants.

While the order of the trial court sustaining the motion of the friends of the court, as it appears in the record, is not clear and definite in its statement of the grounds upon which it is based, the record as a whole conclusively shows that the suit against the Freeport Texas Company was dismissed because in the opinion of the court that defendant was not shown by the evidence to have been doing business in Texas through its alleged agent, the Freeport Sulphur Company, at the time citation in this suit was served upon the Freeport Sulphur Company as its agent, and the question of the sufficiency of the service upon the alleged agent was not decided. This is made clear by the conclusions of fact and law filed by the learned trial Judge, and we do not understand counsel for appellees to contend otherwise.

■ It follows that the controlling question presented by this appeal is whether the evidence adduced upon the hearing sustains the conclusion of the trial court that the Freeport Texas Company was not doing business in Texas through its agent, the Freeport Sulphur Company, upon which citation to the nonresident defendant was served.

The friends of the court, after introducing the affidavit of Mr. Maercky attached to their motion, and which has been above set out, rested their case. With permission of the court the plaintiffs were then allowed to call Mr. Maercky to the witness stand and cross-examine him upon the statements made in his affidavit.

Upon this examination, after repeating the statements in his affidavit as to his residence in Brazoria county and his official position with the Freeport Sulphur Company, he further stated that he received the letter from Mr. Dabney of October 23, 1928, addressed to the executive officers of the Freeport Sulphur Company, requesting permission to plaintiffs as stockholders of Freeport Texas Company to have an investigation made of "the records and activities of the Freeport Sulphur Company," and that in reply he wrote Mr. Dabney, on letterhead of the Freeport Sulphur Company, telling him that his request involved a question of policy which was beyond his jurisdiction as general manager of the Freeport Sulphur Company, and that the matter was referred to the president of the company in New York with request for instructions, and that promptly upon receipt of a reply to this request for instructions he would again write Mr. Dabney, and that, upon receipt of a letter from Mr. E. P. Swenson so instructing him, he notified Mr. Dabney that the request was refused.

This witness further testified that Mr. E. P. Swenson of New York was president of both the Freeport Texas Company and the Freeport Sulphur Company, and that Miss F. M. Altz, a resident of New York, was the secretary of both companies; that the two companies had offices together in New York, and that four of the seven directors of the Freeport Sulphur Company reside in New York; that all of the 2,000 shares of the Freeport Sulphur Company, except 35, held by the directors as qualifying shares, were, as shown by the records of that company, issued to and held by the Freeport Texas Company; that the 5 shares held by him as qualifying shares were held "subject to the direction of Swenson, to surrender them whenever he demands it, and if called on he would surrender them to his superior, E. P. Swenson, in whatever capacity the call was made. That when the Board of the Freeport Sulphur Company met in Freeport, Texas, the Board simply passed on local operating matters, and also ratified the ordinary contracts and agreements and trades which are incidental to the business, which had no connection with the sales end of the business, which was run from the New York office where there was a regular sales organization headed by S. M. Swenson, Vice-President and Salesmanager of the Freeport Sulphur Company, and the witness assumed that he worked under the supervision of the President. E. P. Swenson is President of both companies."

He said that the board at Freeport gave no orders to the sales department, which constitutes a most important branch of the business.

Upon further examination he stated that he received no dividends on the qualifying shares issued to him, and that the certificate for these shares "was endorsed in blank and returned to Mr. Swenson's organization," and he assumed each of the other directors did the same thing.

In reply to the question of where the books, records, and accounts of the Freeport Sulphur Company were kept, the witness stated that they had at Freeport "a record of all the expenditures and copies of vouchers, etc., and an exact duplicate of everything made at Freeport is sent to New York; that we do not have at Freeport records of outturn, records of sales," that these sales records were kept in New York, and that shipments of sulphur were made on orders from the New York office.

The witness said that the regular order forms for the shipments of sulphur were signed by subordinates in the employ of the Freeport Sulphur Company of New York, but he stated this as on his understanding, and that he did not know it to be a fact; that these orders for sale of sulphur were signed by individuals in the New York offices of the Freeport Sulphur Company; that the orders were on letterheads entitled "Freeport Sulphur Company, 52 Wall Street, N. Y.," and that the letters were signed, "Freeport Sulphur Company by ———"; that this Wall street office was the headquarters of Mr. Swenson, whose activities are very large, and that witness understood that he was chairman of the board of the National City Bank and was president of both the Freeport Sulphur Company and the Freeport Texas Company, and that the office of both corporations, as well as Swenson's offices, are all there together, and that his (witness') activities were directed from New York by E. P. Swenson, president of the Freeport Sulphur Company, and that he could bring letterheads and everything of that sort from his office at Freeport so showing, and that he was certain that everything and every order he got comes on letterheads of the Freeport Sulphur Company, and that the Freeport Texas Company does not give him instructions on the operation of the affairs of the Freeport Sulphur Company, and gives him no instructions of any sort, but that E. P. Swenson, in writing letters on different subjects pertaining to the business as a whole, may use the Freeport Texas Company letterheads and that he could dig up such letters in his office.

He was asked:

"Don't you know that he is directing you as President of the holding company? A. He writes me as President of the Freeport Sulphur Company.

"Q. Don't he write you as President of the Freeport Texas Company also; now you just said that he writes you on their letterheads? A. He issues me no instructions as President of Freeport Texas Company."

This witness then produced the following telegram received by him from Mr. Swenson in reply to his letter for instructions in the matter of plaintiffs' request for an examination of the records of the Freeport Sulphur Company:

"New York, New York, October 29th, 1928. "P. G. Maercky, Freeport, Texas.

"Letter 25th, enclosing Dabney correspondence: Williams and associates are not stockholders of Freeport Sulphur Company; therefore it seems impossible that they have any standing in Texas corporation; as you know all Freeport Sulphur Company stock is owned by Freeport Texas Company, of which latter Williams holds three hundred shares; Delaware law under which holding company is incorporated does not grant any right except to inspect stockholders list; resist to the utmost; application is not based on proper motives; he has always attempted to make trouble, but so insignificant as to make his efforts inconsequential. Please inform Mobley of this telegram and advise me further.

"E. P. Swenson, President."

He next produced a letter from Mr. Swenson of the same date confirming the telegram. This letter was written on the letterheads of the Freeport Sulphur Company.

Plaintiffs then put in evidence the correspondence in their petition between Mr. E. Randolph Williams, for himself and the other plaintiffs, and Mr. E. P. Swenson, president of the Freeport Texas Company, relative to plaintiffs' request as stockholders for information as to the business activities of that company disclosed by its records. These letters corroborate the allegations of the petition relative thereto.

On examination by friends of the court. Mr. Maercky testified:

"That his salary was paid from the New York office, by the Freeport Sulphur Company, and that L. Mimms, who was the Assistant General Manager, was also so paid; that there was approximately 900 employees of the Freeport Sulphur Company, and all of these, except probably 6 or 8 who are paid from New York, were paid at Freeport, in Brazoria County, Texas, by the Freeport Sulphur Company, and none of them were paid by any other Company; that the Freeport Texas Company had no permit to do business in Texas; that S. M. Swenson of New York, is the Sales Manager of the Freeport Sulphur Company, and has several employees working under him and has some sort of a sales arrangement with Parsons & Petit, Brokers, at 63 Beaver St., N. Y., and serving the Freeport Sulphur Company as Sales Brokers.

Witness has seen contract of sales and they are executed in the name of Freeport Sulphur Company.

"The shipping orders are on printed forms, bearing the name of the Freeport Sulphur Company, and correspondence on that subject is handled on the stationery of the Freeport Sulphur Company, and in its name, and the witness said he knew of no orders or shipping instructions that had come other than those of the Freeport Sulphur Company and that he knew of no instructions or directions for the operation of its plants or properties for the production of sulphur which had come other than from the officers or directors of the Freeport Sulphur Company, and that as General Manager of this company, he never had any direction or instruction with reference to the production of sulphur or the management of its producing affairs from any officer of the Freeport Texas Company. Freeport Texas Company has ten directors and the Freeport Sulphur Company seven, three being common directors of both companies."

On further examination, of Mr. Maercky by plaintiffs' attorney on the hearing of the plea in abatement presented by the answering defendants, he testified that the Freeport Sulphur Company declares dividends to its stockholders of record on recurring dates previous to each such declaration; that the minutes of his company simply specify the stockholders of record, and that actual transfer of the money is handled in New York and "we see nothing of them at Freeport"; that essentially the sole source of income of the Freeport Sulphur Company is from its sales department, and that the money is all handled in New York; that the salaries of the witness and other executives are paid from New York, and that he draws on New York for the money to meet the pay roll of the employees of the Freeport Sulphur Company and for betterments, maintenance, and operating expenses.

Before discussing the question of whether the evidence adduced on the hearing is sufficient to sustain the conclusion of the trial court that the Freeport Texas Company was not doing business in Texas through its agent, the Freeport Sulphur Company, when the citation to it was served on the alleged agent, we will give our views of the rule of law as declared and now interpreted by our higher state and national courts as to the effect courts, in determining such questions, are required to give to the legal fiction of the "separate entity" of corporations. The rule is happily applied and its underlying principle aptly stated in the following quotation from the opinion of Justice Graves of this court in the case of B. & T. Corp. v. Life Insurance Co., 233 S. W. 1022, 1024: "To apply the technical rules appertaining to the attributes of corporations contended for by appellants to such a situation as was here developed would, it seems to us, be exalting form above substance, appearance above reality, the very thing equity will not do. In addition to the fact of his ownership of the whole of the stock, the evidence before us justifies the further conclusion that this 'distinct corporate entity,' as appellants term it, was but a cloak to shield Hopkins in his individual operations, and that, if the plea of ultra vires had prevailed and this indebtedness been declared null and void as against appellants, he after being undisputedly shown to have received and used all the proceeds of the loan, and despite his admitted liability in propria persona, would yet have been enabled, through the use of this corporate investment, to avoid repayment of the money he had so borrowed and used and also to still retain the property he had pledged as security for it. No principle of either law or equity with which this court is familiar looks with favor upon such legal legerdemain as that."

As more directly applicable to the question presented in this case, the Supreme Court of this state in the case of Buie v. Railway Company, 95 Tex. 51, 65 S. W. 27, 31, 55 L. R. A. 861, held that "the authorities cited fully sustain the proposition that, when one corporation makes use of another as its instrument through which to perform its business, the principal corporation is really represented by the agents of the subcorporation, and its liability is just the same as if the principal corporation had done the business in its own name."

The question under consideration in the Buie Case was whether upon the facts of that case a railway chartered in this state was but a subsidiary and agent of a railway corporation chartered in another state which through such agent was doing business in this state. The court answered this question in the affirmative.

In the case of Peterson v. Railway Company, 205 U. S. 364, 27 S. Ct. 513, 522, 51 L. Ed. 841, the Supreme Court of the United States held, upon facts similar to those shown in the Buie Case, that the parent railway company was not doing business in the state in which its subsidiary was domiciled, and that service upon the agents of the subsidiary company did not bring the parent company before the court. This case is cited and largely relied on by appellees to sustain the judgment of the trial court.

We do not think the Peterson Case controls the question here presented. Aside from the fact that the corporation in that case, the separate entities of which was sought to be disregarded were public service corporations, and a question of public policy was therefore involved which is not present in this case, the facts recited in the opinion distinguish it

from the instant case. In the Peterson Case the outside corporation only owned a controlling interest in the stock of the alleged subsidiary corporation. The fact conclusions upon which the decision in that case is based are thus stated in the opinion:

"It is a fact that both companies had common agents and employees to a certain extent, but the record shows that such employees were paid in proportion to the business done for each company. And that while in the service of the companies respectively they were under the exclusive management and control of the company in whose service they were engaged, with no power to discharge or employ the one company for the other; and that, although the service was in a sense common, it was kept distinct and separate in the control and payment of the employees while in the separate service of the respective companies.

"It is true that the Pacific company practically owns the controlling stock in the Gulf company, and that both companies constitute elements of the Rock Island system. But the holding of the majority interest in the stock does not mean the control of the active officers and agents of the local company doing business in Texas. That fact gave the Pacific company the power to control the road by the election of the directors of the Gulf company, who could, in turn, elect officers or remove them from the places already held; but this power does not make it the company transacting the local business.

"This record discloses that the officers and agents of the Gulf company control its management. The fact that the Pacific company owns the controlling amount of the stock of the Gulf company and has thus the power to change the management does not give it present control of the corporate property and business."

The distinction between the two cases seems obvious to us. There were other stockholders of the Gulf Company besides the Pacific Company, and from the statements in the opinion these minority stockholders held an appreciable substantial interest in the Gulf Company. In such circumstances, the mere unexercised power of control in the Pacific Company did not destroy the separate entity of the Gulf Company.

In addition to this, the evidence affirmatively showed that no control of the activities and operations of the Gulf Company was exercised or attempted to be exercised by the Pacific Company.

In the case made by the record before us, the appellee Freeport Texas Company is the sole owner of the stock of the Freeport Sulphur Company. The entity of a corporation, as separate and distinct from that of its stockholders, is fixed and recognized in law for the benefit of both the stockholders and the public when the purpose of the corporation is one in which the public has a direct interest, but, when there is no public interest involved, this artificial entity is created and preserved primarily for the benefit of the stockholders in carrying on the business of the corporation.

The operation and activities of a purely private corporation can be only lawfully exercised in the interest and for the benefit of its stockholders. This record shows that the only creature, natural or artificial, having a beneficial interest in the Freeport Sulphur Company, is the Freeport Texas Company for its stockholders. Then on what sound reason or theory can it be held that the business done by the Freeport Sulphur Company in this state was not done for the Freeport Texas Company? To hold otherwise, we must assume that the directors and manager of the Freeport Sulphur Company were, in violation of every legal and moral obligation, not carrying on the business of the company for or in the interest of its owners and stockholders, an assumption not only unsustained but negatived by all the testimony in the case. In this situation, it was not necessary for appellants to prove that the Freeport Texas Company dominated and controlled the business of the Freeport Sulphur Company; such domination being inherent in its ownership of all the stock of the sulphur company.

Appellees' attempted refutation of this prima facie domination and control of the business of the sulphur company, if such issue could be raised under the pleadings and the undisputed evidence as to the stock ownership, was not raised by any evidence adduced upon the hearing.

Mr. Maercky's testimony, upon which appellees rely in support of their contention that the sulphur company was not dominated and controlled by the Texas Company, is insufficient to raise that issue. The veracity of this witness may not be questioned, nor his sincerity in the statement that the Texas Company was not doing business in Texas and had within his knowledge no agent in Texas. This statement was but his legal conclusion based upon undisputed facts which, in our opinion, do not sustain such conclusion. His further testimony that all of the instructions given him by Mr. Swenson as to the conduct of the business of the sulphur company were written on letterheads of the sulphur company, and that none of these letters were signed by Mr. Swenson as president of the Texas Company, are wholly immaterial under the other undisputed facts in this case. Neither the letterheads nor the official signature used by the president of both companies can change or affect the fact shown by the undisputed evidence.

Just how it is possible for the officers of a corporation, all the stock of which is owned by one person, not to be, in lawfully transacting the business of the corporation, the agent of the sole stockholder by whom they are elected or appointed, does not occur to us, and the situation is the same whether the sole stockholder be an individual or another corporation.

The use by Mr. Swenson, the president of both corporations, of letter sheets with the name of the sulphur company inscribed on their heads, and signing his letters directing the business of the sulphur company as president of that company, cannot change or affect the undisputed fact that he and the nominal board of directors of the sulphur company and all the nominal agents of that company were the agents of the Texas Company and transacting its business in this state.

■ The authorities fully sustain the proposition that courts should disregard the legal fiction of corporate entity in any case in which the recognition of such entity would protect fraud or a violation of public or private obligations, or when one corporation is organized, exists, and operates as a mere instrumentality of another.

■ The denial by the Texas Company of the right of its stockholders to an inspection of its books and records is a violation of its duty to plaintiffs enjoined both by the common law and the statutes of this state. Revised Statutes, art. 1328. And it cannot, upon the undisputed evidence disclosed by the record, prevent the courts of this state from compelling the performance of that duty, by setting up the legal fiction of the separate entity of the sulphur company.

If our conclusion that the sole ownership by the Texas Company of the stock of the sulphur company makes the sulphur company a mere subsidiary and agent of the Texas Company is not sound, we think the evidence of Maercky clearly shows that the sulphur company was dominated and controlled by the Texas Company in all of its business activities. The fixing and payment of the salaries of the officers, the amount of dividends declared, and their payment, and the custody and disposition of all of the income of the sulphur company, was held and exercised by officers of the Texas Company in the office of that company in New York. The officers of the Texas Company, who alone had absolute knowledge of whether the Texas Company dominated and controlled the business activities of the sulphur company, made no affidavit on this question, and rested their case upon the statements of Maercky, who admittedly had no knowledge of the facts and was only able to give his conclusion that so far as he knew the Texas Company was not doing business in this state and had no agent here.

■ The failure of the defendants to produce on this hearing the testimony of witnesses who could testify from positive knowledge whether such domination and control existed, when it was in their power to produce such testimony, adds probative force to the reasonable inference to be drawn from Mr. Maercky's testimony, that such domination and control was exercised by the Texas Company. When all these facts are considered, we do not think the conclusions of Mr. Maercky that the Texas Company was not doing business in this state and did not within his knowledge have any agent here, raise any issue as to such domination and control.

In addition to the authorities before cited, the following authorities, among many others, sustain our conclusions upon the questions discussed in this opinion: Chicago, M. & S. P. Ry. Co. v. Minn., etc., 247 U. S. 490, 38 S. Ct. 553, 62 L. Ed. 1229; Costan v. Manila Electric Co. (C. C. A.) 24 F.(2d) 383; People v. Bell Telephone Co., 246 Mich. 198, 224 N. W. 438; Berkey v. Third Ave. Ry. Co. et al., 244 N. Y. 84, 155 N. E. 58, 50 A. L. R. 599.

■ It is no answer to appellants' suit in the courts of this state to say that suit could be more conveniently brought in New York where the principal office of the Texas Company is located. The appellants have the right to choose the jurisdiction in which to sue when the defendant can be sued on the cause of action asserted in more than one state.

Upon the question of the sufficiency of the service upon the sulphur company as agent of the Texas Company, which was not decided by the trial court, we are of the opinion that the service shown by the record was sufficient.

We are not required to determine the question of whether appellants were entitled to mandamus against the sulphur company even if the trial court was correct in the holding that the Texas Company was not doing business in this state, because in our opinion the undisputed evidence shows that the Texas Company absolutely owned the sulphur company and was using that company as its subsidiary and agent in the transaction of the business of the Texas Company in this state.

These conclusions require that the judgment of the court below sustaining the motion of the friends of the court and the plea in abatement presented by defendants be reversed, except as to the defendant Maercky individually, and that judgment be here rendered accordingly.

Affirmed in part; reversed and rendered in part.

On Joint Motions to Dismiss, and Withdraw Opinion.

PLEASANTS, C. J.

While a motion for rehearing filed by appellees was pending in this court, the appellants, by election of the stockholders of appellee Freeport Texas Company, were placed in control of the business affairs of that corporation and thereby came into possession of the books, the right to the inspection of which constituted the subject-matter of this suit.

In this situation, the attorneys for appellants and appellees, and the attorneys appearing as friends of the court, filed motions to dismiss the suit because its subject-matter had ceased to exist and the controversy now presents only moot questions.

The parties further ask that the opinion and judgment of this court reversing the judgment of the trial court and rendering judgment for appellants be withdrawn.

It is obvious that upon the facts disclosed in the motion the questions in the case have become moot, and the suit should therefore be dismissed. Southwestern Tel. & Tel. Co. v. Galveston County (Tex. Civ. App.) 59 S. W. 589; McWhorter v. Northcut, 94 Tex. 86, 58 S. W. 720.

The motion to dismiss has been granted, but after due consideration we have reached the conclusion that the request to withdraw our opinion and judgment should be refused.

Under the now existing facts neither the reasoning nor the conclusions expressed in our original opinion can by any proceedings in this suit reach the Supreme Court for final determination, and therefore our conclusions cannot be regarded as settled rules of decision in this state. But we do not feel that the conclusions expressed in the opinion, except as hereinafter indicated, are unsound or will harmfully affect the jurisprudence of the state. In so far as the parties to this controversy are concerned, their immediate rights which constituted the subject-matter of the suit have been fortuitously settled just as the judgment of this court fixed them. In these circumstances, the court feels constrained to refuse the motion to withdraw the opinion. We deem it permissible and proper, however, to make corrections, or modifications, and additions to the conclusions of fact and law contained in our original opinion.

In their motion for rehearing appellees somewhat vigorously complain of the statement in our opinion that "the fixing and payment of the salaries of the officers, the amount of dividends declared, and their payment, and the custody of all of the income of the Sulphur Company, was held and exercised by officers of the Texas Company in the office of that company in New York."

In this statement we did not intend, and we do not think it can be fairly interpreted, to go beyond the facts testified to by appellees' witness Maercky. The officers of the Texas Company who exercised the authority to determine the matters mentioned in the statement did act upon such matters in the New York office of the Texas Company. These officers of the Texas Company were also officers of the sulphur company, but the only ground upon which Mr. Maercky based his conclusions that in determining these questions they were acting as officers of the sulphur company rather than the Texas Company was that when the result of such decisions was made known to him the communication was written on a letterhead bearing the name of the sulphur company, and the dual officer in New York who signed these communications, and who was an officer of both companies, signed as an official of the sulphur company. It seems to us that upon the facts in this case set out in our original opinion the capacity in which these dual officers acted in directing the affairs of the sulphur company should not rest upon the name of the company appearing on the head of the letter communicating to their subordinate the decision of questions determinative of the control and domination of the sulphur company by the Texas Company, nor upon the official designation which the writer saw fit to append to his signature to the letter. The domination and control of the business of the sulphur company by the Texas Company was determinative of the question of whether the Texas Company was doing business in this state through its agent, the sulphur company. Mr. Maercky's testimony discloses that he did not and could not know the truth of this matter, but the facts within his knowledge and to which he testified were, in our opinion, sufficient to raise the issue of such domination and control. It is clear from the record that the fact vel non of such domination and control was within the knowledge of Mr. Swenson, who was the president of both companies, and of other dual officers of the two companies; and when in these circumstances they kept silent and failed to disclose the true facts, the courts should give probative force to their silence, and this, added to the other circumstances shown by the record, leads this court to the irresistible conclusion that the business of the sulphur company was wholly dominated and controlled by the Texas Company.

We were not unmindful when our original opinion was written that the Supreme Court of this state had seemingly entirely repudiated the decision in the case of Buie v. Railway Company, 95 Tex. 51, 65 S. W. 27, 55 L. R. A. 861. But we thought, and still think, that the Peterson Case, 205 U. S. 364, 27 S. Ct. 513, 51 L. Ed. 841, which caused such re-

pudiation, is distinguishable upon its facts from the instant case.

■ Upon further consideration, however, we feel constrained to withdraw the holding in that opinion that because of the sole ownership of the stock of the sulphur company by the Texas Company, it was unnecessary for the facts to otherwise show the control and domination by the Texas Company of the sulphur company.

The legal fiction of the separate entity of a corporation as distinct from that of the owner or owners of its stock cannot be generally disregarded without destroying the primary object and purpose of such organization, but such legal fiction should be disregarded when necessary for the prevention of fraud or to protect the legal rights of third parties. The fiction of separate entity is not so sacred that a court of equity, looking through forms to the substance of things, may not ignore it to circumvent fraud or wrong to innocent parties. This rule seems to be well settled when the wrong complained of is the violation of a clear statutory or common-law right of the complainant. United States v. Reading Co., 253 U. S. 26, 40 S. Ct. 425, 64 L. Ed. 760; United States v. Del. Lack. & Western R. R., 238 U. S. 516, 35 S. Ct. 873, 59 L. Ed. 1438; Chicago, M. & St. P. Ry. v. Minn. Civic Ass'n, 247 U. S. 490, 38 S. Ct. 553, 62 L. Ed. 1229.

In the Reading Case, which arose under the Commodities Clause of the Hepburn Act (49 USCA § 1 (8), a holding company owned the capital stock of a coal mining company and of a carrier which transported the coal. The Commodities Clause forbade a carrier to transport a commodity "mined, or produced by it, or under its authority," or which it owned "in whole or in part," or in which it had "any interest, direct or indirect." After stating that the mere ownership of stock in a coal company by a carrier which transported the former's product did not violate the clause, the Supreme Court held that even if the carrier in the instant case did not own any stock in the coal company, they were both controlled by the holding company that the evidence showed that the holding company used them both as a mere "instrumentality," that the coal was both mined and transported under the same "authority," and that the clause had therefore been violated. A similar holding was made in the other cited cases.

In cases of this kind the courts generally substitute the rule or theory of identity for that of the separate entity of the corporations involved in the controversy. United States v. Lehigh Valley R. R. Co., 220 U. S. 272, 31 S. Ct. 387, 55 L. Ed. 458; Luckenbach S. S. Co. v. W. R. Grace & Co. (C. C. A.) 267 F. 676.

The rule which gives immunity to the stockholders of a corporation being based upon the legal fiction of the separate entity of the corporation, when the justice and equity of a particular case require that this fiction be ignored, there can be no sound objection to the substitution therefor of the legal fiction of identity.

It seems to us that the law should resolutely set its face against corporate wrong and injustice inflicted through improper manipulation by parent corporations of their subsidiaries, and to accomplish this end restrictive technicalities should not be permitted to stand in the way.

Motion to dismiss granted.

Motion to withdraw opinion refused.